## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**PURE EDGE LIGHTING LLC,**

        Plaintiff,

v.

**LIGHTBLUE USA & ASSOCIATES, LLC d/b/a RAYHIL INC.,**

        Defendant.

Civil Action No: 26-cv-1458

**JURY TRIAL DEMANDED**

### COMPLAINT

Plaintiff Pure Edge Lighting LLC, ("Plaintiff" or "Pure Edge"), by and through its attorneys, for its Complaint against Rayhil Inc., ("Defendant" or "Rayhil") alleges as follows:

### THE PARTIES

1. Plaintiff Pure Edge Lighting LLC ("Pure Edge") is a limited liability company organized under the laws of Illinois with its principal place of business located at 1718 W. Fullerton Ave., Chicago, IL 60614.

2. Upon information and belief, Defendant Rayhil Inc. ("Rayhil") is the assumed name of the limited liability company, Light Blue USA & Associates organized under the laws of New York with its principal place of business located at 186 Van Dyke Street Brooklyn, NY 11231. *See*, https://apps.dos.ny.gov/publicInquiry/AssumedNameHistory (Last Accessed 2/23/2026).

### JURISDICTION AND VENUE

3. This is an action for patent infringement under 35 U.S.C. §§ 1 *et seq*., including 35 U.S.C. § 271. Pure Edge brings this action to seek damages and injunctive relief arising out of

Rayhil's infringement of U.S. Patent No. 10,240,762 B1 ("the '762 Patent") attached hereto as **Exhibit A**.

4.       This Court has original subject matter jurisdiction over Plaintiff's federal claim for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338 (a).

5.       This Court has personal jurisdiction over Defendant because Defendant is a citizen and resident of this State and this District.

6.       Venue in this District is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendant resides in this District as it was registered and organized under the state laws of New York. Additionally, Defendant has a regular and established place of business in this District, and is engaging in various activities including making, offering for sale, selling, using, distributing and/or importing its products in this District.

## BACKGROUND FACTUAL ALLEGATIONS

7.       Pure Edge is a leading innovator in lighting design and solutions.  Its focus is in energy efficient, contemporary, specification-grade architectural lighting.

8.       To protect its investment in its innovations, Pure Edge has applied for and received multiple U.S. patents.  Relevant here, Pure Edge is the exclusive owner, by way of assignment, of all right, title and interest in the '762 Patent, including the right to enforce.  Accordingly, Pure Edge has standing to sue for infringement of the invention claimed in its '762 Patent.

9.       The '762 Patent claims an electric recessible track assembly and method of installation in standard 5/8-inch-thick drywall. Plaintiff's patent was issued March 26, 2019, and remains valid and enforceable to this day.

10.     Pure Edge practices and sells products embodying the '762 Patent under its TruTrack® line of products. *See* **Exhibit B** (U.S. Trademark Registration No. 6,471,366).

11. Rayhil owns and operates a website at https://rayhil.com where it advertises and offers for sale through its authorized agents, a magnetic LED Track Light System under its QUE Track line of products. Specifically, the QUE products at issue are Rayhil's "Trimless Track Products" consisting of at least the Trimless Mount Mud-In Track (https://rayhil.com/product/recessed-mount/) (last accessed 02/24/2026) and the Trimless Mount Non-Mud-In Track (https://rayhil.com/product/pre-buried-mount/) (last Accessed 02/24/2026). The Trimless Track Products directly infringe the claims of the '762 Patent.

### THE '762 PATENT

12. Pure Edge is and has at all relevant times been the owner by way of assignment to all rights title and interest in the '762 Patent and thus possesses all rights to recovery under the '762 Patent.

13. The '762 Patent issued on March 26, 2019. Exhibit A.

14. The '762 Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282.

15. Claim 1 of the '762 Patent reads:

An electric track system comprising:

a section of extruded track having a length and defined by a channel having first and second opposing sidewalls, a base wall, and a longitudinal opening opposite the base wall;

a first bus rod extending the length of the track section and secured within the channel to the first sidewall;

a second bus rod extending the length of the track and secured within the channel to the second sidewall;

a first lateral flange extending laterally from an exterior of the first sidewall substantially parallel to the base wall and for at least a portion of the length of the track; and

a second lateral flange extending from an exterior of the second sidewall substantially parallel to the base wall and for at least a portion of the length of the track;

wherein the height of the channel sidewalls is approximately equal to a ⅝-inch surface thickness and the first and second bus rods are coupled to a power source.

16.    Claims 2-10 of the '762 Patent are dependent apparatus claims stemming from Claim 1. *See* Exhibit A.

17.    Claim 11 of the '762 Patent reads:

A track lighting system comprising:

a section of extruded track having a predefined length and comprising:

a channel having first and second opposing sidewalls, a base wall, and a longitudinal opening opposite the base wall;

a first lateral flange extending laterally from an exterior of the first sidewall substantially parallel to the base wall and for at least a portion of the length of the track; and

a second lateral flange extending from an exterior of the second sidewall substantially parallel to the base wall and for at least a portion of the length of the track;

a first bus rod secured within the channel to the first sidewall;

a second bus rod secured within the channel to the second sidewall; and

at least one light fixture having a base slidably retained within the channel, the base having contacts electrically engaged with the first and second bus rods;

wherein the height of the channel sidewalls is approximately equal to a ⅝-inch surface thickness, the first and second bus rods are coupled to a power source and the first and second lateral flanges are secured to a surface such that the channel is recessed within the surface.

18.    Claims 12-15 of the '762 Patent are dependent apparatus claims stemming from Claim 11. *See* Exhibit A.

19.    Claim 16 of the '762 Patent reads:

A method for recessing a track for lighting, the method comprising the steps of:

providing a length of track comprising:

a channel having first and second opposing sidewalls, a base wall, and a longitudinal opening opposite the base wall;

a first bus rod extending the length of the track section and secured within the channel to the first sidewall;

a second bus rod extending the length of the track and secured within the channel to the second sidewall;

a first lateral flange extending laterally from an exterior of the first sidewall substantially parallel to the base wall and for at least a portion of the length of the track; and

a second lateral flange extending from an exterior of the second sidewall substantially parallel to the base wall and for at least a portion of the length of the track;

creating an opening defined within a surface having a thickness of ⅝-inch;

coupling the first and second bus rods to a power source;

placing the channel of the track within the opening; and

securing the first and second lateral flanges to the surface to retain the channel within the opening such that the channel does not extend beyond the thickness of the surface.

20.    Claims 17-19 of the '762 Patent are dependent apparatus claims stemming from Claim 16. *See* Exhibit A.

<strong>RAYHIL'S INFRINGEMENT</strong>

21.    At least as early as June 21, 2023, Rayhil made, used, displayed, installed, and offered for sale, the QUE Track Light System, which includes the Trimless Track Products. Specifically, the Track Systems were installed and displayed at the Dallas International Lighting Show or 'Lightovation2023' located at the Dallas Market Center from June 21- June 24, 2023.[1]

22.    On July 11, 2023, Rayhil began to advertise the QUE Track Lighting System on the "News" section of its website. A screenshot of the relevant article is attached hereto as **Exhibit C**.

23.    Rayhil's website displays the infringing Trimless Track Products with various attachments and lighting accessories. On information and belief, each Trimless Track Product displayed on Rayhil's website contains a "Where to Buy" link for consumers to find Rayhil's authorized third-party representatives, agents, and/or contractors throughout the United States that sell, display, install, or otherwise distribute Rayhil Products. *See* **Exhibit D.**

24.    Additionally, Rayhil's QUE Track Light System Ordering Guide and Specification Guide shows that the Trimless Track products are made and offered for sale in a variety of different track lengths, track shapes, and colors. *See* **Exhibit E** at pp. 1-2, 4-5.

---

[1] *See* @deekay_lighting, INSTAGRAM (posted July 4, 2023), https://www.instagram.com/reel/CuTO8ImP3HR/ (video of Rayhil Track Light System, captioned "The all new @rayhil_lighting Magnetic led track system, beautifully displayed at the #dallasmarketcenter #lightovation2023 Coming soon, pre order ready.") (Last accessed February 25, 2026).

25.    Accordingly, Rayhil has made, used, installed, sold, and/or offered to sell the Trimless Track Products within the United States.

26.    As shown below, the Trimless Track Products infringe on at least claim 1, and the subsequent apparatus claims of the '762 Patent.

| Claim 1 of '762 Patent | QUE Track Light System | |
|---|---|---|
| An electric track system | | |
| a section of extruded track having a length and defined by a channel having first and second opposing sidewalls, a base wall, and a longitudinal opening opposite the base wall; | | |
| a first bus rod extending the length of the track section and secured within the channel to the first sidewall; | | |
| a second bus rod extending the length of the track and secured within the channel to the second sidewall; | | |
| a first lateral flange extending laterally from an exterior of the first sidewall substantially parallel to the base wall and for at least a portion of the length of the track; and | | |
| a second lateral flange extending from an exterior of the second sidewall substantially parallel to the base wall and for at least a portion of the length of the track; | | |
| wherein the height of the channel sidewalls is approximately equal to a ⅝-inch surface thickness and the first and second bus rods are coupled to a power source. | | |

27.     Rayhil's Trimless Track Product listings on its website also contain a link to the Track Light System Installation Guide, which directly instructs Rayhil's customers, agents, third-party representatives and/or contractors how to install the Trimless Track Products. The Installation Guide is applicable to all QUE Track Lighting Systems and includes Step-by-Step diagrams and notes for proper installation. *See* **Exhibit F**.

28.     On information and belief, because the Trimless Track Products must have been installed in a recessed surface to be displayed at the Dallas International Lighting Show, at least method claim 16 of the '762 Patent has been practiced in the United States, either by Rayhil, or its representative, contractor, or customer of Rayhil.

29.     When installed within a standard ceiling surface 5/8-inch thick, the installer of the Trimless Track Products performs each and every step of method claim 16 of the '762 Patent.

30.     On September 19, 2025 through its counsel, Pure Edge sent Rayhil a letter that provided actual notice of the '762 Patent and its rights thereunder, and that demanded that Rayhil cease its infringing activities.  *See* **Exhibit G**.  Despite further correspondence between the parties, through their respective counsel, the parties could not come to an agreement, necessitating the present suit.

31.     Accordingly, Rayhil had actual notice of the '541 Patent at least as early as September 19, 2025.

**COUNT I: DIRECT PATENT INFRINGEMENT**
**35 U.S.C. § 271(a)**

32.     Pure Edge realleges and incorporates each of the allegations set forth in Paragraphs 1-31 as if restated herein in their entirety.

33.     Rayhil has infringed and continues to infringe one or more claims of the '762 Patent by making, using, importing, selling, installing, and/or offering to sell the QUE Trimless Track Products in the United States without authorization or license from Pure Edge.

34.     Rayhil has had actual knowledge of the '762 Patent since at least September 19, 2025, by virtue of the cease-and-desist letter sent by Pure Edge.

35.     On information and belief, Rayhil had actual knowledge of the '762 Patent prior to commencing its infringement.

36.     Rayhil has profited from its infringement of the '762 Patent, and Pure Edge has suffered actual harm as a result of Rayhil's infringement.

37.     As a direct and proximate result of Rayhil's infringement, Pure Edge has suffered irreparable harm and monetary and other damages in an amount to be determined.

38.     Rayhil's infringement has been and continues to be willful.  Accordingly, Pure Edge is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

39.     Unless Rayhil is preliminarily and permanently enjoined by this Court from continuing its infringement of the '762 Patent, Pure Edge will continue to suffer additional irreparable harm, including loss of market share and erosion of its patent rights.

### COUNT II: INDUCED PATENT INFRINGEMENT
### 35  U.S.C. § 271(b)

40.     Pure Edge realleges and incorporates each of the allegations set forth in Paragraphs 1-39 as if restated herein in their entirety.

41.     The Patent Laws of the United States provide that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).

42.     On information and belief, Rayhil contracts with third-party representatives, agents, and/or contractors throughout the United States that sell, display, install, or otherwise distribute the accused Trimless Track Products. *See, e.g.*, Exhibit D, displaying "Where to Buy" link for consumers to locate Rayhil's third-party representatives, agents, or contractors in the United States.

43.     When the third-party representatives, agents, contractors, or customers sell, display, install, assemble, or otherwise distribute the accused Trimless Track Products, they directly infringe at least Claim 1 of '762 Patent.

44.     When Rayhil instructs third-party representatives to sell, display, install, or otherwise distribute the accused Trimless Track Products, or instructs contractors or customers to make or install the Trimless Track Products through its Installation Guide (*See*, Exhibit F), it instructs them to commit direct infringement of at least Claim 1 of the '762 Patent.

45.     Rayhil has known since at least as early as September 19, 2025, that third-party representatives commit direct infringement of at least Claim 1 of the '762 Patent when selling, displaying, installing, or otherwise distributing the Trimless Track Products, and that contractors, agents, and customers commit direct infringement by assembling and installing the Trimless Track Products using Rayhil's Installation Guide.

46.     Rayhil at all relevant times intended that its third-party representatives, agents, and/or contractors commit direct infringement of one or more claims of the '762 Patent when selling, displaying, installing, or otherwise distributing the Trimless Track Products, and that contractors and customers commit direct infringement by installing the Trimless Track Products by providing an Installation Guide on the Trimless Track Product webpages.

47.     Rayhil has had actual knowledge of the '762 Patent since at least September 19, 2025, by virtue of the cease-and-desist letter sent by Pure Edge.

48.     On information and belief, Rayhil had actual knowledge of the '762 Patent prior to commencing its induced infringement.

49.     Upon information and belief, Rayhil has profited from its induced infringement of the '762 Patent, and Pure Edge has suffered actual harm as a result of Rayhil's induced infringement.

50.     As a direct and proximate result of Rayhil's induced infringement, Pure Edge has suffered irreparable harm and monetary and other damages in an amount to be determined.

51.     Upon information and belief, Rayhil's induced infringement has been and continues to be willful.  Accordingly, Pure Edge is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

52.     Unless Rayhil is preliminarily and permanently enjoined by this Court from continuing its induced infringement of the '762 Patent, Pure Edge will continue to suffer additional irreparable harm, including loss of market share and erosion of its patent rights.

### COUNT III: CONTRIBUTORY PATENT INFRINGEMENT
### 35 U.S.C. § 271(c)

53.     Pure Edge realleges and incorporates each of the allegations set forth in Paragraphs 1-52 as if restated herein in their entirety

54.     The Patent Laws of the United States provide that "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or

commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

55.    At all relevant times, Rayhil has known and intended that the assembly and installation of its Trimless Track Products constitute infringement of one or more claims of the '762 Patent.

56.    When the third-party representatives, contractors, agents, or customers assemble or install the accused Trimless Track Products, they directly infringe one or more claims of '762 Patent.

57.    The Trimless Track Products are made and especially adapted for use in infringement of one or more claims of the '762 Patent.

58.    The Trimless Track Products are not staple articles or commodities of commerce suitable for substantial non-infringing use.

59.    Rayhil has known since at least as early as September 19, 2025, that its representatives, contractors, agents, and/or customers commit direct infringement of the '762 Patent when installing and/or assembling the Trimless Track Products.

60.    Rayhil at all relevant times intended that its representatives, contractors, agents and/or customers commit direct infringement of the '762 Patent when installing or assembling the Trimless Track Products, including but not limited to the act of displaying the Rayhil Installation Guide.

61.    Rayhil has had actual knowledge of the '762 Patent since at least September 19, 2025, by virtue of the cease-and-desist letter sent by Pure Edge.

62.    Upon information and belief, Rayhil had actual knowledge of the '762 Patent prior to commencing its contributory infringement.

63.     Rayhil has profited from its contributory infringement of the '762 Patent, and Pure Edge has suffered actual harm as a result of Rayhil's contributory infringement.

64.     As a direct and proximate result of Rayhil's contributory infringement, Pure Edge has suffered irreparable harm and monetary and other damages in an amount to be determined.

65.     Rayhil's contributory infringement has been and continues to be willful. Accordingly, Pure Edge is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

66.     Unless Rayhil is preliminarily and permanently enjoined by this Court from continuing its contributory infringement of the '762 Patent, Pure Edge will continue to suffer additional irreparable harm, including loss of market share and erosion of its patent rights.

### PRAYER FOR RELIEF

Wherefore, Plaintiff Pure Edge Lighting LLC requests that this Court find in its favor and grant Plaintiff the following relief:

A.     That Judgment be entered that Rayhil has committed direct infringement of the '762 Patent under 35 U.S.C. § 271(a).

B.     That Judgment be entered that Rayhil has committed induced infringement of the '762 Patent under 35 U.S.C. § 271(b).

C.     That Judgment be entered that Rayhil has committed contributory infringement of the '762 Patent under 35 U.S.C. § 271(c).

D.     That, in accordance with 35 U.S.C. § 283, Rayhil, Inc., and all their affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from (1) directly or indirectly infringing

the '762 Patent  and (2) making, using, selling, and offering for sale the accused Trimless Track Products;

E.      A finding that Rayhil, Inc.'s infringement has been willful;

F.      An award of damages sufficient to compensate Plaintiff for Rayhil, Inc.'s infringement under 35 U.S.C. § 284, in no event an amount less than a reasonable warranty, including an award of enhanced damages up to three times the amount found or assessed;

G.      That the case be found exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its attorneys' fees;

H.      Costs and expenses incurred in this action;

I.      An award of prejudgment and post-judgment interest; and

J.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial jury on all issues so triable.


Date: March  12, 2026                              Respectfully submitted,

                                                   /s/ Edward L. Bishop
                                                   Edward L. Bishop
                                                   ebishop@bdl-iplaw.com
                                                   Benjamin A. Campbell
                                                   bcampbell@bdl-iplaw.com
                                                   James J. Jagoda
                                                   jjagoda@bdl-iplaw.com
                                                   Brockton D. Ash
                                                   bash@bdl-iplaw.com
                                                   BISHOP & DIEHL, LTD.
                                                   1475 E. Woodfield Road, Suite 800
                                                   Schaumburg, IL 60173
                                                   Tel.: (847) 969-9123

                                                   *Counsel for Plaintiff Pure Edge Lighting LLC*